IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BECKY ELMHORST,

        Plaintiff,

v.                                                           CIV 02-137 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Becky Elmhorst is a young woman who applied for benefits based on mental retardation for the period commencing with her birth. The Administrative Law Judge ("ALJ") denied benefits finding that her impairment does not equal a listing, and that she can perform unskilled entry-level work as defined by the "grids." *Administrative Record* ("*Record*") at 16-17. The Appeals Council declined review on December 6, 2001, thereby rendering the ALJ's decision final. *Id.* at 4-5.

This matter is before the Court on Plaintiff's Motion to Reverse or Remand, *Doc. 8,* where she claims that: her impairment meets Listing § 12.05(D), the ALJ's residual functional capacity and credibility findings are not supported by the record, and the ALJ erred in relying conclusively on the grids. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. I have carefully considered the entire record, find the motion well-taken at the ALJ's step three analysis, and remand the action to the Commissioner for further proceedings.

## I. Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II. Analysis

Listing § 12.05(D) first requires a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R., Subpart P., Appendix 1, § 12.05(D). It further requires that the scores result in at least two of four things: "marked restriction of activities of daily living;" "marked difficulties in maintaining social functioning;" "marked difficulties in maintaining concentration, persistence, or pace;" or "repeated episodes of decompensation, each of extended duration." *Id.*

The ALJ found "no evidence to show the existence of any impairment that meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations" based on the absence of any treating or examining physician findings and "the opinions of the State agency medical consultants who evaluated this issue." *Id.* at 10. In so concluding, the ALJ rejected the

letter from Dr. Loretta L. McNamara, Plaintiff's pediatrician, who wrote:

> Becky Elmhorst is a patient of mine. She is developmentally delayed and unable to support herself financially. Thus she is dependent on her parents for insurance coverage.

*Id.* at 166. He properly declined to give controlling weight to this opinion because no objective medical evidence supported it. *Id.* at 11; *see also Castellano,* 26 F.3d at 1029.

In his opinion, the ALJ also noted a May 2000 determination by the New Mexico Department of Health advising that Plaintiff "meets the criteria for mental retardation/ developmental disability and is eligible for DD Waiver services [for residential, non-residential, respite, and medicaid services] according to state and federal guidelines." *Record* at 181. The ALJ's reasons for not crediting the report do not appear in the opinion, but are apparent from the discussion he had with counsel during the hearing. That is, the letter granting the waiver did not specify in which three areas Plaintiff has "substantial functional limitations," *see id.* at 183, and, in any event, the standards by which the waiver determination was made are not the same criteria as the Administration uses, *see id.* at 35-36. The waiver evidence is not binding on the Administration, and it is not reversible error for the ALJ to have failed to discuss the matter further. *See Baca v. Dept. of Health & Human Servs.,* 5 F.3d 476, 480 (10th Cir. 1993); *Musgrave v. Sullivan,* 966 F.2d 1371, 1375 (10th Cir. 1992); *Kralicek v. Apfel,* 2000 WL 1153288 at *3 (10th Cir. 2000) (attached to Defendant's response and citing *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

"The question whether a claimant meets or equals a listed impairment is strictly a medical determination." 20 C.F.R. §§ 404.1526(b), 416.926(b). *Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). Without treating physician evidence, the remaining medical evidence that the

3

ALJ had to consider in determining whether Plaintiff met Listing § 12.05(D) was the IQ tests Plaintiff received while in school,[1] the IQ test performed by a examining consulting psychologist, and the nonexamining consultant's Psychiatric Review Technique (PRT).

At the hearing, counsel for Plaintiff specifically argued that Listing § 12.05(D) was met based the tests performed while in school, which showed a full scale IQ of 51 at age 10; of 55 at age 14; and of 55 at age 18. *See Record* at 37, 104, 142, 146, 196. Here, in support of her argument that she meets Listing § 12.05(D), Plaintiff also relies in part on a test conducted after the ALJ issued his decision and the Appeals Council denied review. *See Doc. 9, Exh. A.* Plaintiff asks that I not strike the evidence as Defendant requests, but that I consider it "as evidence that the ALJ's reliance on one-time artificially high I.Q. results was error, both because there were consistent, longitudinal I.Q. reports that the ALJ rejected, and to show that the report from Dr. Adams resulted in an inflated I.Q. score." *Doc. 16* at 5-6. However, this court "is not at liberty to consider evidence not in the record certified by the Secretary." *Atteberry v. Finch,* 424 F.2d 36, 39 (10th Cir. 1970). I do not do so here.

Citing *Clifton v. Chater,* Plaintiff further contends that the ALJ erred in not citing and discussing each of the elements of Listing § 12.05(D) in his opinion. That omission is not necessarily conclusive of Plaintiff's motion because, unlike the situation in *Clifton,* here the ALJ

---

[1] School psychologists are specifically listed as "acceptable medical sources" in the regulations:

> Licensed or certified psychologists. Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only.

20 C.F.R. § 404.1513(a)(2).

did discuss his reasons and the evidence in arriving at his conclusion at step three. Thus, I am not faced with a "bare conclusion [that] is beyond meaningful judicial review." *Clifton,* 79 F.3d at 1009.

Nevertheless, I find that the ALJ's opinion at step three is not supported by substantial evidence and did not employ the correct legal standards. In his step three analysis, the ALJ discussed the February 2000 testing results and report by examining psychologist Carl Adams, Ph.D., which placed Plaintiff at a Full Scale IQ of 72, or two points beyond the listing, and contrasted that with her most school IQ scores and what she had accomplished in school:

> The claimant's grade reports from the Albuquerque Public Schools indicated that the claimant had a cumulative GPA of 2.921, which was well above average. In fact most of her grades were either A's or B's. The evidence suggests that the claimant received only three below-average grates in Biology and Math II respectively. Otherwise, her cumulate GPA would not have been so low (Ex. 8E). . . .
>
> Adams . . . examined the claimant and reported that the claimant's . . . test scores revealed a Full Scale IQ of 72, placing her in the borderline range of intellectual functioning. This was specifically reported by Dr. Adams to be improved from her September 1997, Full Scale IQ score of 55, which placed her in the moderate range of mental retardation. It also noted that the claimant attended mainstream educational classes in about the 10th grade that resulted in her graduation from school at the age of 19 (she was adopted from Korea and attended no formal schooling prior to coming to the United States at age of 7). The claimant was diagnosed with a learning disorder and borderline intellectual functioning. The claimant reported that she was working as a courtesy clerk and was attending school at the Albuquerque Technical Vocational Institute and was majoring in culinary arts (Ex. 3f).

*Id.* at 10-11.

Nowhere in the ALJ's opinion does he discuss the seemingly large discrepancy between

Dr. Adams' scores, which put Plaintiff two points beyond Listing § 12.05(D), and the scores Plaintiff consistently received in school, which put Plaintiff into Listing § 12.05(B) (requiring only a "valid verbal, performance, or full scale IQ of 59 or less"). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling [sic] evidence." *Morales v. Apfel,* 225 F.3d 310, 317 (3rd Cir. 2000). Indeed, if the medical evidence is "inconsistent with other evidence," the ALJ is to "weigh all of the evidence." 20 C.F.R. § 404.1527(C)(2).

In addition, nowhere does the ALJ explain why he chose to credit Dr. Adams' results in light of those discrepancies. A clue to the ALJ's reasoning appears during the hearing, where ALJ stated that **based on his own experience** school tests are "considerably lower [for] a lot of reasons . . . financing, education of who's giving the test, quality of the test, type of exam" and that "the other problem you're going to have with 12.05d is that her full scale performance and verbal are all above 70 [in Dr. Adams' report]." *Record* at 37. In choosing to reject medical evidence, however, an ALJ cannot make "'speculative inferences from medical reports'" *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales,* 225 F.3d at 317), or reject medical evidence "due to his or her own credibility judgments, speculation or lay opinion,'" *id.,* or "reject evidence for no reason or for the wrong reason," *Morales,* 225 F.3d at 317.

In *Morales,* the Third Circuit further stated that the "principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability. *Id.* at 319. The ALJ's omissions in his analysis here are particularly important because Tenth Circuit is not among the courts that have recognized a five-point

6

"margin of error" in IQ testing. *See Dover v. Apfel,* 203 F.3d 834, 2000 WL 135170 (10th Cir. 2000) ("we have previously rejected precisely this same 'margin of error' argument by claimants counsel [in] *Barinard v. Sec'y of Health and Human Servs.,* . . . 1994 WL 170783 at *1 (10th Cir. May 5, 1994) . . . *see also Ellison* . . . (finding that claimant's verbal IQ of 72 did not satisfy the two-part test of Listing 12.05(C))."); *compare Gorecki v. Massanari,* 197 F. Supp. 2d 154, 162-63 (M.D. Pa. 2001) (surveying case law and holding "I.Q. scores have an error of measurement of approximately five points [thus] Plaintiff's lowest I.Q. score was 72 [would be adjusted to 67]. . . placing his score within the range set forth under § 1205(C).").

Because the errors at step three are dispositive of remand, I need not address the other issues.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion is granted, the matter is remanded to the Commissioner for further proceedings, and a final order shall enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.